IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA L. SALETTA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> acting commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) | No. 13 C 2293 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gina Saletta ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits. The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court denies the Commissioner's Motion for Summary Judgment [22], grants in part and denies in part Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [19], and remands this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

# BACKGROUND

## I. PROCEDURAL AND FACTUAL HISTORY[1]

Since 2008, Plaintiff has suffered from intense back and leg pain. After seeing a variety of physicians, she was diagnosed with degenerative disc disease and spinal stenosis. Unfortunately, she saw little success with prescribed medications and therapy, and her back problems deteriorated to the point of interfering with virtually all aspects of her life. Plaintiff thus filed a Title II application for SSDI benefits, alleging a disability onset date of November 15, 2008. Her application was denied initially and upon reconsideration. Accordingly, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled at Step Four of the Social Security Administration's sequential analysis.

At the hearing, the ALJ found that Plaintiff suffered from one severe impairment: lumbar stenosis. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated Plaintiff's Residual Functional Capacity ("RFC") and found that she could perform sedentary work with the following exceptions: she must never climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs; she should only occasionally balance, stoop, kneel, crouch, or crawl; she should avoid concentrated exposure to workplace hazards, such as heights and moving machinery; and she must be allowed to sit for forty-five minutes before standing for one to two minutes.

---

[1] The following facts from the parties' submissions are undisputed unless otherwise noted.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a switchboard operator. Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act.

## STANDARD OF REVIEW

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a

finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.   JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

In reviewing an ALJ's decision, a court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, asserting: (1) the ALJ improperly determined that Plaintiff's claims of pain and functional limitations were not credible; (2) the ALJ improperly discredited the opinions of Plaintiff's treating physicians; (3) the ALJ calculated Plaintiff's RFC without relying on medical evidence; and (4) the ALJ erroneously gave no weight to a letter submitted by Plaintiff's friend and former employer. Because the Court finds the ALJ's credibility analysis to be dispositive, it will confine its discussion to that issue only.

### I. The ALJ's Credibility Determination

An ALJ's credibility determination will not be overturned unless it was "patently wrong" and "lack[ing] in any explanation or support." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). Here, the ALJ discredited Plaintiff's testimony because: (1) her claims of pain and functional limitations were undercut by her part-time jobs and daily activities; (2) she stated at the hearing that she was afraid of getting spinal fusion surgery, but scheduled it shortly afterwards; and (3) her alleged onset date conflicts with evidence the record. On their face, these reasons seem legitimate, but they fail upon closer inspection.

With respect to Plaintiff's part-time work, the Commissioner rightly notes that claimant's ability to perform part-time work during a period of alleged disability may diminish her credibility. *See Berger v. Astrue*, 516 F.3d 539, 646 (7th Cir. 2008). But Plaintiff's part-time work was all but typical. For example, in her most recent job as a caretaker for her friend's newborn children, Plaintiff hardly did anything more than monitoring and administering medication. For more strenuous activities, Plaintiff was assisted by her friend's relative, who would lift and carry the children and assist with any other activities that might have aggravated Plaintiff's back. Moreover, Plaintiff was allowed to lie down, ice her back, and nap throughout the day to alleviate her pain. Thus, while it is true that she worked as a caretaker thirty-two hours per week, this hardly cuts against her credibility. To the contrary, the extent to which Plaintiff's impairments were accommodated by her unique part-time job strongly supports her claims of disabling pain and functional limitations.

The same cannot be said of Plaintiff other part-time job as a physician's assistant, but it is nonetheless unclear whether her performance of that job undermines her credibility. At the hearing, the ALJ solicited testimony regarding Plaintiff's work as a caregiver, but did not investigate whether her work as a physician's assistant was similarly accommodating. Instead, the ALJ assumed, on the basis of Plaintiff's Work History Report, that she spent a good deal of her time on her feet and doing postural activities, such as kneeling, crouching, and lifting light weight objects. This reasoning is problematic for a number of reasons.

6

First, Plaintiff worked as a physician's assistant from 2003-2010, which means she worked that job for five years before the onset of her alleged disability. It is thus entirely possible that Plaintiff engaged in various postural activities before 2008 but refrained from such activities as her back pain worsened. The Work History Report does little to clarify this, however, because it is a "check-list report" and does not provide room to distinguish work performed during different periods, such as Plaintiff's work pre- and post-2008. (*See* R. 213.) To be sure, the Court is not making a finding on this particular issue, but the specifics of Plaintiff's work as a physician's assistant post-2008 must nonetheless be made clear in order to determine whether her performance of that job indeed undermines her credibility.[2]

The ALJ's analysis of Plaintiff's daily activities is similarly troubling. In her opinion, the ALJ discredited Plaintiff because she testified that she was able to wash dishes, make the bed, do laundry, attend church, and drive her children places. On their face, these activities *might* count against Plaintiff's credibility, but a closer look to her testimony paints a different picture. For example, although Plaintiff testified to being able to drive her children *occasionally*, she explained that doing so required her to bring a supportive pillow and ice her back. (R. 55.) Likewise, Plaintiff clarified that occasionally making her bed, doing dishes, and

---

[2] The Court also notes that even if Plaintiff was consistently able to perform her duties to the extent indicated in the Work History Report, the same report makes clear that she worked only two, seven-hour shifts per week. Thus, while the report *perhaps* shows that Plaintiff could, at times, engage in postural movements, it hardly demonstrates that she could do so on a full-time basis. As such, that aspect of the report is not particularly probative of Plaintiff's disability and, by extension, her credibility. *See Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010) ("There is a significant difference between being able to work a few hours a week and having the capacity to work full time.")

folding laundry all caused her intense pain. Going to church was no different: she could get there, but she could not kneel and needed a supportive pillow to sit. In light of these qualifications, the Court cannot ascetain how this testimony undermines Plaintiff's credibility, especially when read in light of her other statements regarding her need for assistance when showering, her difficulty in lifting a gallon of milk, and her inability sweep or vacuum in any capacity. Apparently, from the ALJ's perspective, Plaintiff would have had to refrain from any household or religious activity whatsoever in order to be believable. But that is an unduly high, and legally unsupportable, standard for judging a claimant's credibility, and the Court therefore declines to uphold it.

The Court is equally puzzled by the ALJ's focus on Plaintiff's fear of spinal surgery and subsequent scheduling of that surgery. That Plaintiff expressed reluctance to getting *spinal fusion surgery* is not particularly reflective of her credibility, especially considering that her doctors disagreed about whether she should have the surgery. (*See* R. 466-68.) It matters little that despite her testimony at the hearing, she scheduled surgery shortly thereafter because she ultimately did not have that surgery, which resolves any apparent inconsistency in her position. But more fundamentally, the Court cannot agree that fearing spinal surgery and flip-flopping about whether to get such surgery is an inconsistency that justifies disbelieving a claimant's allegations of pain. Spinal fusion surgery is a major procedure with many risks and no guarantee of success. Given that more conservative treatment (viz., years of medication, therapy, and spinal injections)

8

has consistently failed to alleviate Plaintiff's back pain, it is no surprise that she eventually scheduled surgery despite her fear of the risks. The ALJ's reasoning is therefore deficient in this respect as well.

The last aspect of the ALJ's credibility finding — the apparent inconsistency between a 2009 medical record and Plaintiff's alleged onset date — is belied by the record: a treatment note from 2008 clearly shows that Plaintiff was diagnosed with "[degenerative disc disease] – moderate central, lateral disc herniation at L5-S1 and small central herniation at L4-5." (R. 339.) Although the record form 2009 indicates that Plaintiff's back problems were "controlled" if she "did the right things," (R. 332), that statement was quoted by a psychologist, not a relevant doctor. Moreover, the record is replete with diagnoses from 2008 through 2010 indicating Plaintiff suffered from severe back problems that were unresponsive to treatment. (*See, e.g.,* R. 269-302). The ALJ's credibility determination is therefore unfounded, and this case must be remanded for further consideration of Plaintiff's credibility.

Because the above issues are sufficient to warrant remand, the Court declines to address in detail the remaining errors claimed by Plaintiff. The Court notes, however, that the issues underlying the ALJ's credibility determination also dovetail with the analysis of Plaintiff's treating physicians. For example, the ALJ gave no weight to the opinion of Plaintiff's primary physician, Dr. Boblick, because his RFC assessment contained restrictions that were inconsistent with Plaintiff's performance of her part-time jobs. This is problematic because, as discussed above, the ALJ misconstrued and failed to investigate the nature of Plaintiff's jobs. As

9

such, the ALJ's sole reason for dismissing Dr. Boblick's opinion is lacking. And given that Dr. Boblick opined Plaintiff was significantly more restricted than the ALJ founder her to be, it follows that reconsideration of his opinion is vital to the outcome of this case.

In remanding, the Court is mindful of the Commissioner's position that recent treatment notes indicate that "[Plaintiff's] back condition had deteriorated only minimally" and that she "achieved a significant improvement of symptoms, including increasing sitting tolerance." (Def.'s Br. at 12.) But these selective quotes do not capture the entire story. The statement that Plaintiff's condition deteriorated only minimally must be understood in terms of her entire course of treatment. Significant evidence demonstrates that Plaintiff has suffered from a severe back problem since 2008. Thus, if a recent record indicates that her condition "deteriorated only minimally," that means she went from bad to worse, not that her back problems are somehow magically minimal.

Furthermore, although Plaintiff indeed experienced some improvement in her symptoms after seeing new doctors and trying new treatments in 2011, this was because she had repeated epidural and anesthetic injections into her spine. (*See* R. 859-67.) After those shots would wear off, however, she would return to her doctors in excruciating pain. As it is unclear whether such treatment can (or should) be administered indefinitely, the Court is unwilling to find that Plaintiff has "improved significantly."

## CONCLUSION

For the above reasons, the Court denies the Commissioner's Motion for Summary Judgment [22], grants in part and denies in part Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [19], and remands this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

**SO ORDERED.**                **ENTERED:**

**DATE: March 10, 2015**        _____
                                **HON. MARIA VALDEZ**
                                **United States Magistrate Judge**